IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTHONY BACA,

    Plaintiff,

v.                                          Civil No. 04-692 WJ/RHS

JOHN E. POTTER, Postmaster
General, United States Postal Service,

    Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DISMISSING PLAINTIFF'S STATE LAW CLAIM WITHOUT PREJUDICE**

THIS MATTER comes before the Court pursuant to Defendant's Motion for Summary Judgment (Doc. 22). Having reviewed the submissions of the parties and being fully advised on the law, I find that Defendant's motion is well taken with regard to all of Plaintiff's federal law claims and will be granted with regard to these claims. The Court concludes that one of Plaintiff's claims is brought under New Mexico state law, this claim is preempted under federal law, and the claim will accordingly be dismissed without prejudice.

**BACKGROUND**

Plaintiff filed his Complaint in this matter on June 18, 2004 alleging Title VII gender discrimination in Count I, discrimination based on disability in violation of the Rehabilitation Act[1] in Count II, retaliation in violation of Title VII in Count III, breach of contract in Count IV,

---

[1] Plaintiff's Complaint actually alleges a violation of the Americans with Disabilities Act (ADA). However, parties acknowledge that Plaintiff's claim is correctly treated as a claim under the Rehabilitation Act.

breach of the covenant of good faith and fair dealing in Count V, and wrongful retaliatory discharge in Count VI.  By stipulation filed April 12, 2004, Plaintiff dismissed his contract claims in Counts IV and V.  See Docket No. 17.  Viewing the evidence in a light most favorable to Plaintiff, as the Court must when ruling on a motion for summary judgment, the facts are as follows:

Plaintiff was a letter carrier for the United States Postal Service (USPS) working out of the Academy Station in Albuquerque, New Mexico.  At some time while working as a letter carrier, Plaintiff sustained an on-the-job injury in the form of a rotator cuff tear.  As a result, Plaintiff was offered a Temporary Limited Duty Assignment.

At some point in time in 2000, Plaintiff believed his supervisor at the time, Mr. Singh, was violating his medical work restrictions, and Plaintiff filed an EEO complaint.  Shortly after Plaintiff filed this complaint, Glen Giron became the manager at the Academy Station replacing Mr. Singh as Plaintiff's supervisor.  Mr. Giron was the station manager from 2000 until January 2002. Mr. Giron was aware of Plaintiff's EEO Complaint and discussed it with Plaintiff in passing on at least one occasion.  Mr. Giron remarked that Plaintiff should consider retiring when he won his EEO claim.  According to Plaintiff, Mr. Giron mistreated him because of the 2000 EEO Complaint by removing Plaintiff's desk and refusing to give Plaintiff a heater for his workspace.  In January or early February 2002, Mr. Giron became the acting assistant postmaster for Albuquerque and began working out of the main post office in Albuquerque.  Ed Pinero became the manager of the Academy Station and Plaintiff's supervisor when Mr. Giron was promoted.

In February 2002, Plaintiff's Temporary Limited Duty Assignment consisted of answering the phone at the Academy Station between 7:00 a.m. and 3:30 p.m. Plaintiff sent a formal notice under the Federal Tort Claims Act to the postmaster at the main post office in Albuquerque where Mr. Giron was the acting assistant postmaster. The notice was dated February 19, 2002 and was received at the main post office on February 27, 2002. Plaintiff urges that Mr. Giron must have known of the tort notice received that day.

Plaintiff's tort notice stated that Plaintiff intended to bring a prima facie tort action against the United States Postal Service (USPS) for negligence, intent to harm and intentional infliction of emotional distress under the Federal Tort Claims Act and all applicable laws. The notice clarified that Plaintiff's claims arose from his on the job injuries that were aggravated when he was forced to perform duties outside his medical restrictions. The notice specified that the torts occurred when Mr. Singh required Plaintiff to carry mail on his regular mail route when he was under a doctor's orders not to do so.

On that same day that Plaintiff's tort notice was received at the main post office, Plaintiff's supervisor, Ed Pinero, offered Plaintiff a new Limited Duty Assignment to answer the phone at the station from 9:00 a.m. to 5:30 p.m. This change in Plaintiff's assignment did not alter his duties, pay or benefits. It only changed his hours. The change was within the limits of Plaintiff's medical restrictions at the time. Mr. Pinero told Plaintiff to either accept the new position or go home.

According to Defendant, the position was offered to Plaintiff because the Academy Station needed someone to answer the phone between 3:30 p.m. and 5:30 p.m. Plaintiff disputes this and contends that Mr. Pinero, likely at the direction of Mr. Giron, changed Plaintiff's

3

assignment in retaliation for the tort notice received the same day at the main post office. Plaintiff asserts that Defendant did not adjust the work hours of similarly situated employees inasmuch as Mary Ann Valdez, Henry Lopez, and Barbara Murphy, all assigned to Permanent Limited Duty, did not have their hours changed. Plaintiff further states that Gloria Barros, on Temporary Limited Duty, did not have her hours changed.

Mr. Pinero's offer of the new assignment was in writing. Plaintiff refused the new assignment in writing and did not report to work on the following day, February 28, 2002. According to Plaintiff, he did not report to work because his Union representative told him not to report to work. On March 1, 2002, Plaintiff attempted to return to work. He spoke with Mr. Pinero over the phone, and Mr. Pinero told him he could not return to work without dealing with "injury comp."[2]

On March 21, 2002, Plaintiff submitted a Certification of Health Care Provider to the USPS requesting leave under the Family Medical Leave Act from March 4, 2002 through April 1, 2002. The Certification was signed by Chris Meira, M.D., Plaintiff's primary treating physician, and stated that Plaintiff suffered from a serious health condition described as "severe stress causing (job related) anxiety and depression causing work incapacity." The Certification explicitly described Plaintiff's condition as job related. Also on March 21, 2002, Dr. Meira signed a release for Plaintiff to return to work on April 1, 2002 "from 7:00 a.m. to 3:30 p.m. only." On or about March 28, 2002, Mr. Pinero sent a letter to Plaintiff informing him that Dr. Meira could not dictate Plaintiff's hours of employment and advising him that he could return to work at the

---

[2] The record does not give any definition or description by which the Court may determine the meaning of "injury comp" at this time.

Academy Station for the assignment from 9:00 a.m. to 5:30 p.m.  Plaintiff rejected Mr. Pinero's offer to return to work for these hours.  Between February 2002 and September 2002, Plaintiff was treated by his primary physician, Dr. Meira, a psychologist, Melinda Garcia, and a psychiatrist.

In June 2002, Plaintiff filed a new EEO Complaint alleging discrimination on the basis of gender, retaliation, and a claim based on his disability which he described as his rotor cuff tear.

In July 2002, Tim Welde became the Acting Manager for the Academy Station.  In late August 2002, Plaintiff and Defendant entered into a pre-arbitration settlement agreement by which the parties agreed that Plaintiff would return to work for the hours 9:00 a.m. to 3:30 p.m.  The agreement expressly stated that Plaintiff could continue to grieve the two hours from 3:30 p.m. to 5:30 p.m.  On September 3, 2002, Melinda Garcia released Plaintiff to work pursuant to the terms of the agreement.

Plaintiff returned to work on September 9, 2002.  He signed a limited duty job assignment for the hours of 9:00 a.m. to 5:30 qualifying his acceptance as being "under protest" meaning that he intended to grieve the hours from 3:30 to 5:30 in accordance with the pre-arbitration settlement agreement.  According to Plaintiff, he was placed conspicuously in the middle of the workroom floor to answer phones, and his co-workers were staring and laughing at him.  Plaintiff worked from 9:00 a.m. to 3:30 p.m.

On September 10, 2002, Plaintiff reported to work and spoke with Mr. Welde immediately.  He requested that Mr. Welde not to put him in the middle of the workroom floor, and stated that he needed privacy.  He told Mr. Welde that he was uncomfortable in the middle of the floor, that his co-workers were taunting him, and that it was stressful.  Mr. Welde responded

5

that he'd spoken to Olivia Reynolds, an occupational nurse, and was concerned about placing Plaintiff in a position that might deteriorate his condition. He told Plaintiff that he needed more information from Plaintiff's doctor and sent Plaintiff home.

Plaintiff saw his psychologist, Melinda Garcia, that same day, September 10. Garcia concluded that Plaintiff could not return to work until his condition stabilized. A month later, on October 10, 2002, Garcia released Plaintiff to return to work but the release specified that Plaintiff needed a part-time, low stress position in an area in which Plaintiff would have some privacy. The letter indicated that placing Plaintiff in the middle of the workroom floor would aggravate his disorder. Plaintiff mailed a copy of this letter to Mr. Welde.

On October 23, 2002, Plaintiff had not heard from Mr. Welde regarding his release to return to work so called Welde. He asked to be allowed to return to work in a "stress-free" environment, and that he be afforded privacy to perform his work. Welde responded that he did not have to give Plaintiff privacy. According to Defendant, Welde then offered Plaintiff a desk outside the manager's office and Plaintiff declined. According to Plaintiff, Welde made no further offers to allow Plaintiff to return to work and, in fact, told Plaintiff there was no work for him at the Academy Station or anywhere else in Albuquerque. This date was Plaintiff's last attempt to return to work. Plaintiff considered himself fired.

According to Plaintiff, Ann Newman, a co-worker, was given Plaintiff's limited duty assignment answering phones after Welde represented that there was no work available for Plaintiff. Plaintiff's evidence of this consists of his own testimony regarding what he was told by Ms. Newman. Defendant asserts that Ms. Newman's limited duty assignment was not the same as Plaintiff's because Ms. Newman did many tasks and only occasionally answered the phone, and

6

because Ms. Newman worked only four hours a day. Defendant's evidence consists of Ms. Newman's affidavit regarding her duties and hours while on limited duty assignment.

Plaintiff contacted his EEO counselor after October 23, 2002 and asked to amend his EEO Complaint. On January 15, 2003, the Senior EEO Complaints Investigator sent a letter to Plaintiff indicating that his EEO Complaint had been amended and that a new issue for investigation included discrimination on the basis of gender, physical disability (rotor cuff) and retaliation (prior EEO activity) when Plaintiff's hours were changed and he had not been allowed to return to work because he did not accept the change. The letter made no mention of job related stress or depression as a disability, and Plaintiff does not dispute that this letter is an accurate description of Plaintiff's EEO claims.[3] The letter does state that Plaintiff's claim included the refusal of Defendant to allow him to return to work from February 27, 2002 through the date of the amendment.

On January 31, 2003, Plaintiff submitted an Application for Disability Retirement with the Civil Service Retirement System. On July 2, 2003, Plaintiff's application was approved. At that time, he was still formally employed by the USPS, though he had not worked since September 9, 2002. When his application was approved, Plaintiff formally resigned from the USPS. Plaintiff receives disability retirement from the Veterans Administration ("VA").

---

[3]Plaintiff does dispute that his claim of disability discrimination only relates to his rotor cuff injury and points out that he filed a Worker's Compensation claim for job related stress and depression. However, a Worker's Compensation claim does not substitute for an EEO Complaint.

7

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Worrell v. Henry, 219 F.3d 1197, 1204 (10th Cir. 2000). The burden of showing an absence of a genuine issue of material fact falls upon the moving party. See Adler v Wal-Mart Store, Inc., 144 F.3d 664, 670 (10th Cir. 1998). However, when the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by pointing out to the Court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986); Adler, 144 F.3d at 671. The nonmoving party must then go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial sufficient to support a verdict for the nonmovant. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In setting forth facts, the nonmoving party need not present evidence in a form admissible at trial, but the content or substance of the evidence must be admissible. Adams v. American Guarantee and Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000). Thus, hearsay testimony cannot be considered. Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995). In ruling on a motion for summary judgment, a Court does not weigh the evidence, but determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Jeffries v. State of Kansas, 147 F.3d 1220, 1228 (10th Cir. 1998). In making this determination, the Court must construe all the facts in the record and reasonable inferences that can be drawn from those facts in a light most favorable to the nonmoving party. Worrell, 219 F.3d at 1204; Jeffries, 147 F.3d at 1228.

**DISCUSSION**

I.   PLAINTIFF'S CLAIMS OF GENDER DISCRIMINATION, DISABILITY DISCRIMINATION AND RETALIATION

Claims of gender discrimination under Title VII, claims of disability discrimination and claims of retaliation are all analyzed within the McDonnell Douglas burden shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973) (Title VII discrimination); Cummings v. Norton, 393 F.3d 1186, 1189 (10th Cir. 2005) (disability discrimination under the Rehabilitation Act); Pastran v. K-Mart Corp., 210 F.3d 1201 (10th Cir. 2000) (retaliation claims). Under this framework, a plaintiff bears the initial burden of making a prima facie showing of his claim. McDonnell Douglas Corp., 411 U.S. at 802. After a plaintiff makes a prima facie showing, the burden shifts to the defendant to rebut the prima facie case by proffering a facially legitimate explanation for its conduct. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993). Once the defendant articulates a legitimate reason for its conduct, the burden shifts back to the plaintiff to show discriminatory intent, either through direct evidence, or by proving that the reasons the defendant offered are not the true reasons for the defendant's action, but are merely a pretext for discrimination. Jones v. Unisys Corp., 54 F.3d 642, 628 (10th Cir. 1995).; Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 529 (10th Cir. 1994). "Pretext can be shown be such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and thence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).

   A.   Plaintiff's Gender Discrimination Claim

In order to make a prima facie showing of gender discrimination, Plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See Jones v. Denver Post Corp., 203 F.3d 748, 753 (10th Cir.2000).  The third prong is often shown by presenting evidence that the plaintiff was treated less favorably than similarly situated employees not in his protected class. Trujillo v. Univ. of Colo. Health Sciences Ctr., 157 F.3d 1211, 1214 (10th Cir. 1998).  When a plaintiff is not a member of an historically favored class, the prima facie case is modified, and a plaintiff must show circumstances supporting an inference that the defendant is an unusual employer that discriminates against the majority. Sanchez v. Philip Morris Inc., 992 F.2d 244, 248 (10th Cir. 1993).

Defendant urges that Plaintiff has failed to make a prima facie showing of gender discrimination because he has failed to produce any evidence that the USPS is an employer that discriminates against the majority or sufficient evidence to support a reasonable probability that, but for his status as a male, the decision to modify his hours would not have occurred.  Defendant further contends that Plaintiff cannot show an adverse employment action.  Finally, Defendant argues that, even if Plaintiff makes a prima facie showing of gender discrimination, he cannot show that Defendant's articulated reasons are a pretext for discrimination.

With regard to the first prong of the prima facie case, Plaintiff agrees that he must establish circumstances supporting an inference that Defendant is an employer that discriminates against the majority.  Plaintiff asserts that he has met this burden by showing that Defendant refused to allow him to return to work while simultaneously giving a female co-worker, Ms. Newman, the exact assignment sought by Plaintiff -- answering phones at the Academy Station.

Plaintiff also maintains that female employees, Ms. Barros and Ms. Newman, were treated more favorably than Plaintiff.  Plaintiff further argues that the evidence establishing his prima facie case is sufficient to establish that Defendant's proffered legitimate reasons for its actions are a pretext for discrimination.

Plaintiff's evidence that Ms. Newman was given the exact assignment sought by Plaintiff is hearsay based solely on Plaintiff's testimony regarding Ms. Newman's statements allegedly made to him.  The Court cannot consider this hearsay evidence on summary judgment.  Defendant's evidence with regard to Ms. Newman's assignment is admissible, in the form of her own affidavit testimony, and shows that Ms. Newman performed many tasks besides answering phones.  With regard to Ms. Barros, Plaintiff offers insufficient evidence that she was similarly situated to him.  His testimony suggests that Ms. Barros was, like him, on a Temporary Limited Duty Assignment.  However, Plaintiff offers no evidence that Ms. Barros' assignment, in terms of duties and restrictions, was similar in nature to his own.  Thus, Plaintiff has failed to make a prima facie showing that he is a member of a protected class because he has failed to produce any evidence that the USPS is an employer that discriminates against the majority or sufficient evidence to support a reasonable probability that, but for his status as a male, the decision to modify his hours would not have occurred.  Even if Plaintiff had made a prima facie showing, he has failed to offer sufficient evidence from which a reasonable jury could infer that Defendant's proffered reasons for altering Plaintiff's schedule, to provide phone coverage at the Academy Station from 3:30 p.m. to 5:30 p.m., was a pretext for gender discrimination.  Defendant is accordingly entitled to summary judgment on Plaintiff's claim of gender discrimination under Title VII in Count I.

B.   Plaintiff's Disability Discrimination Claim

To establish a prima facie case of disability discrimination, a plaintiff must show that (1) he is disabled within the meaning of the Rehabilitation Act; (2) he is otherwise qualified for his job; and (3) he suffered an adverse employment action because of his disability.

Defendant argues that Plaintiff cannot make his prima facie case of disability discrimination because he cannot show that he is disabled within the meaning of the Rehabilitation Act, because he cannot show that he suffered an adverse employment action, and because he does not present sufficient evidence that Defendant's proffered legitimate reasons for its actions are a pretext for disability discrimination.

Plaintiff contends that he has shown he is disabled because it is undisputed that he suffered a work-related rotor cuff injury for which he received a limited duty assignment and because he receives disability benefits from the VA.  Plaintiff urges that Defendant failed to allow him to return to work and that this was an adverse employment action.  Plaintiff also argues that he suffered an adverse employment action when Defendant altered his schedule.  Finally, Plaintiff asserts that he has presented sufficient evidence of pretext in showing that similarly situated employees were treated more favorably because they did not have their schedules changed and were given assignments when Plaintiff was told there was no work to be done in Albuquerque.

In order to establish that he has a disability within the meaning of the Rehabilitation Act, Plaintiff must show (1) that he has a physical or mental impairment that substantially limits one or more of the major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.  29 C.F.R. § 1630(g); see also Welsh v. City of Tulsa, Okla., 977 F.2d 1415, 1417 (10th Cir. 1992).  A physical or mental impairment is

> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin and endocrime; or
> (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h)(1). Any impairment must be significant and its impact permanent or long-term. McGeshik v. Principi, 357 F.3d 1146, 1150 (10th Cir. 2004). In addition to these definitions, there are specific definitions for "major life activities" and "substantially limits." See 29 C.F.R. § 1630.2(i) and (j).

While it is undisputed that Plaintiff suffered a work-related rotor cuff tear and receives disability benefits from the VA, Plaintiff has failed to show that he has a disability as defined by the Rehabilitation Act. He has not shown that his rotor cuff injury is significant or that its impact is permanent or long-term. He has not shown that his rotor cuff injury substantially limits one or more major life activities. He offers no information on the "disability" for which he receives VA benefits, and the Court cannot assume that these benefits are for the same rotor cuff injury on which his Rehabilitation Act claim is based. Even if Plaintiff could show that his VA benefits were awarded for his rotor cuff tear, a VA determination of disability is not binding with regard to the Rehabilitation Act definition of disability. See 29 C.F.R. Pt. 1630, App. § 1630.2(k) ("The fact that an individual has a record of being a disabled veteran, or of disability retirement, or is classified as disabled for other purposes does not guarantee that the individual will satisfy the definition of 'disability' under part 1630"); Howell v. Sam's Club No. 8160/Wal-Mart, 959 F.Supp. 260, 267 (E.D. Pa. 1997) (VA disability determination of disability does not establish a record of disability for purposes of ADA); Wilborn v. Ashcroft, 222 F.Supp.2d 1192 (S.D. Cal.

13

2002) (receipt of VA disability benefits does not establish a record of impairment for purposes of the Rehabilitation Act); cf. Weiler v. Household Fin. Corp., 101 F.3d 519, 523-24 (7th Cir. 1996) (Social Security determination of disability not binding under the ADA because the statutes relevant to each define disability differently, have divergent legal standards, and do not share a common legislative intent). Accordingly, Plaintiff has failed to make a prima facie showing of disability discrimination, and Defendant is entitled to summary judgment on Plaintiff's claim of disability discrimination in Count II.

      C.      Plaintiff's Title VII Retaliation Claim

To establish a prima facie case of retaliation, Plaintiff must show that (1) he engaged in activity protected under Title VII; (2) he suffered an adverse employment action subsequent to the protected activity; and (3) there was a causal connection between Plaintiff's participation in the protected activity and the adverse employment action. Gunnell v. Utah Valley State College, 152 F.3d 1253, 1262 (10th Cir. 1998). Defendant contends that Plaintiff cannot make a prima facie case of retaliation because he did not engage in protected activity, he was not subjected to an adverse employment action, and he cannot show a causal connection between any adverse action and any allegedly protected activity. Plaintiff counters that he engaged in protected activity when he filed an EEO Complaint in 2000 and when he sent the notice of tort claim in February 2002. Plaintiff fails to argue that he engaged in protected activity when he filed an EEO Complaint in June 2002 or when he amended that Complaint in October 2002. However, these activities are clearly in the record, and the Court will consider them. Plaintiff argues that he suffered adverse employment actions when his schedule was changed and when Defendant refused to allow him to return to work which resulted in Plaintiff's forced retirement. Plaintiff finally

urges that he has offered sufficient evidence that there is a causal connection between the adverse actions taken against him and his protected activity.

Filing an EEO Complaint certainly qualifies as protected activity under Title VII. Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir.1999). Even informal complaints to superiors of discrimination constitute protected activity for purposes of a Title VII retaliation action. O'Neal v. Ferguson Const. Co.,237 F.3d 1248 (10th Cir. 2001). However, a complaint or other activity that does not oppose discrimination or conduct that the complainant reasonably believes is discriminatory is not protected activity for purposes of Title VII. See Hertz v. Luzenac America, Inc., 370 F.3d 1014, 1016 (10th Cir. 2004) (for a claim of retaliation, a plaintiff need only show he opposed conduct he reasonably believed was discriminatory); Gunnell, 152 F.3d at 1262 (protected activity prong of retaliation prima facie case requires that a plaintiff engaged in opposition to Title VII discrimination).

Plaintiff's filing of an EEO Complaint in 2000, his EEO Complaint in June 2002 and his amendment of his Complaint in October 2002 qualify as protected activity. However, his tort notice sent to Defendant in February 2002 does not. The tort notice makes no mention of discriminatory conduct. It only states that Plaintiff intends to file a prima facie tort claim against Defendant for negligence, intent to harm and intentional infliction of emotional distress. The letter specifies that the tort actions are based on job related injuries and exacerbation of those injuries. Nothing in the letter hints at gender or disability **discrimination** by Defendant. Accordingly, this is not protected activity.

Rather than analyze whether Plaintiff suffered an adverse employment action when Defendant changed his schedule or when Defendant allegedly refused to allow Plaintiff to return

to work, the Court will assume, for purposes of this motion only, that these were adverse employment actions.  Even assuming this, however, Plaintiff cannot make a prima facie showing of discrimination because there is no evidence these adverse employment actions are causally connected to Plaintiff's protected activity.

In many cases, a plaintiff shows a causal connection by showing that adverse action closely follows protected conduct.  Miller v. Automobile Club Of New Mexico, Inc., 420 F.3d 1098, 1121 (10th Cir. 2005).  Unless the adverse action is very closely connected in time to the protected activity, a plaintiff must rely on additional evidence beyond mere temporal proximity to show a causal connection.  Id.

In this case, Plaintiff's first EEO Complaint was made in 2000, and the actions he alleges were adverse employment actions all occurred in 2002.  With a period of more than a year between the protected activity and the allegedly adverse employment action, Plaintiff must offer some other evidence of a causal connection between the protected activity and Defendant's decision to change his schedule and not allow him to return to work.  Plaintiff argues that Mr. Giron's behavior toward him during his 2000 EEO activity is evidence that the 2002 actions were taken as a result of his 2000 EEO activity.  Even assuming that Mr. Giron gave Plaintiff a "hard time" in 2000 while Plaintiff was engaged in protected EEO activity,[4] this is not evidence from which a reasonable jury could find a causal connection between Plaintiff's 2000 protected activity and the events that occurred in 2002.  Accordingly, there is no causal connection between Plaintiff's 2000 EEO Complaint and any alleged adverse actions.

---

[4]According to Plaintiff, Mr. Giron suggested that Plaintiff retire if he won his EEO complaint, removed Plaintiff's desk and refused to provide a heater for Plaintiff's workspace.

Plaintiff's June 2002 and October 2002 protected activity occurred subsequent to Defendant's attempt to change Plaintiff's schedule. Similarly, Plaintiff's October 2002 protected activity occurred after Defendant refused to allow Plaintiff to return to work. There can be no causal relationship between an adverse action and subsequent protected activity. Accordingly, there is no causal relationship between Plaintiff's protected activity and Defendant's attempt to change Plaintiff's schedule and no causal relationship between the October 2002 protected activity and Defendant's alleged refusal to allow Plaintiff to return to work.

Plaintiff's June 2002 protected activity occurred at least three months before Defendant refused to allow Plaintiff to return to work. This period of time is not sufficiently short to show a close connection in time between Plaintiff's protected activity and the alleged adverse action. Thus, Plaintiff must provide additional evidence of a causal connection between his June 2002 protected activity and Defendant's refusal to allow Plaintiff to return to work.

The evidence shows that Plaintiff was permitted to return to work on September 9, 2002 and was only sent home, pending further evaluation by his doctor, when he complained that the working conditions were causing him stress. The resulting evaluation determined that Plaintiff could not return to work at that time. Plaintiff was not released by his doctor to return to work for another month, and this release was conditioned on Plaintiff being given even more limited hours with greater environmental restrictions. Defendant's refusal in October 2002 to allow Plaintiff to return to work with these more narrow restrictions does not suggest any causal connection to Plaintiff's protected activity in June 2002, and Plaintiff has accordingly failed to make a prima facie showing of retaliation. Defendant is thus entitled to summary judgment on Plaintiff's retaliation claim.

17

II.     PLAINTIFF'S CLAIM OF WRONGFUL RETALIATORY DISCHARGE

Defendant argues that this Court lacks jurisdiction over Plaintiff's claim for wrongful retaliatory discharge in Count VI because Plaintiff did not exhaust this claim by filing an EEO Complaint alleging constructive discharge. Defendant's argument assumes that Plaintiff's claim is brought under Title VII. Plaintiff's response does not address Defendant's jurisdictional assertion with regard to the claim construed as a Title VII claim. However, Plaintiff's response suggests, through citation to case law from New Mexico state courts, that Plaintiff's claim is brought pursuant to state tort law.

To the extent Plaintiff's claim is brought under Title VII, the Court has already determined that Defendant's refusal to allow Plaintiff to return to work, the essence of Plaintiff's constructive discharge allegation, is not causally related to any of Plaintiff's protected activity and has granted summary judgment to Defendant with regard to that claim. Accordingly, the Court need not address Defendant's argument that Plaintiff failed to exhaust such a claim.[5]

To the extent the claim is brought pursuant to New Mexico state tort law, the Tenth Circuit has held that "state law challenges to federal personnel actions within the scope of the [Civil Service Reform Act] CSRA are preempted by the CSRA," and "the CSRA was intended to provide the exclusive procedure for challenging federal personnel decisions." Petrini v. Howard, 918 F.2d 1482, 1484, 1485 (10th Cir.1990). Plaintiff's retaliatory discharge claim falls into the CSRA's prohibition against taking any discriminatory personnel action "against any employee ... on the basis of conduct which does not adversely affect the performance of the employee ... or the

---

[5]The Court notes that Plaintiff's amended EEO Complaint filed in October 2002 did alleged that Defendant had retaliated against Plaintiff by refusing to allow Plaintiff to return to work.

performance of others" or under its prohibition against any personnel action against an employee for the "exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation." 5 U.S.C. § 2302(b) (9)(A) and (10). Accordingly, any state tort law claim for wrongful retaliatory discharge is preempted by the CSRA, and this claim must be dismissed without prejudice. See Petrini, 918 F.2d at 1485.

**CONCLUSION**

      IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is hereby GRANTED IN PART with regard to Plaintiff's claim of gender discrimination in Count I, disability discrimination in Count II, retaliation in Count III and retaliatory discharge under Title VII in Count VI.

      IT IS FURTHER ORDERED that Plaintiff's claim of wrongful retaliatory discharge in Count VI, to the extent the claim is brought pursuant to state tort law, is DISMISSED WITHOUT PREJUDICE.

                                                      _____
                                                      UNITED STATES DISTRICT JUDGE